UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| PALOMINO MASTER LTD., AZTECA PARTNERS LLC, and APPALOOSA LP,<br><br>Plaintiffs,<br><br>v.<br><br>CREDIT SUISSE GROUP AG, AXEL P. LEHMANN, and ULRICH KÖRNER,<br><br>Defendant. | Civil Action No. 24-05539 (JXN) (JRA)<br><br>OPINION |

**NEALS**, District Judge:

This matter comes before the Court on Plaintiffs Palomino Master Ltd., Azteca Partners LLC, and Appaloosa LP's (collectively, "Plaintiffs") appeal pursuant to Federal Rule of Civil Procedure 72(a) and Local Civil Rule 72.1(c)(1) (ECF No. 20) of the January 31, 2025 Opinion and Order ("January 31 Order" or "Op.") entered by the Honorable José R. Almonte, U.S.M.J. ("Judge Almonte"). (ECF No. 19). The Court has carefully considered the parties' submissions and decides this matter without oral argument under Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, Plaintiff's appeal (ECF No. 20) is **DENIED**, and the January 31 Order (ECF No. 19) is **AFFIRMED**.

**I.      BACKGROUND AND PROCEDURAL HISTORY**

On January 31, 2025, Judge Almonte issued an Opinion and Order granting Defendants Credit Suisse Group AG ("Credit Sussie"), Axel P. Lehmann, and Ulrich Körner's (collectively "Defendants") motion to transfer this case to the United States District Court for the Southern District of New York ("S.D.N.Y."), pursuant to 28 U.S.C. § 1404(a). (ECF No. 19). Plaintiffs appeal that decision. (ECF No. 20). The relevant facts follow.

"Plaintiffs initiated this action to recover investment losses allegedly due to Defendants' misrepresentations about a bank's financial health during a one-week span in March 2023, during which the bank suffered serious liquidity issues." (Op. at 1).

On June 20, 2024, Defendants filed a motion to transfer the case to the S.D.N.Y. (ECF No. 11). On July 11, 2024, Plaintiffs opposed. (ECF No. 12). On July 25, 2024, Defendants replied. (ECF No. 13). On January 31, 2025, Judge Almonte granted Defendants' motion. (ECF No. 19).

On February 14, 2025, Plaintiffs appealed the January 31, 2025 Order. ("Pls.' Br.") (ECF No. 20). On March 3, 2025, Defendants opposed. ("Defs.' Br.") (ECF No. 21). On March 10, 2025, Plaintiffs replied. (ECF No. 22). This matter is now ripe for consideration.

## II.   STANDARD OF REVIEW

Magistrate judges may hear non-dispositive pretrial matters under 28 U.S.C. § 636(b)(1)(A) and Federal Rule of Civil Procedure 72(a). A district court may reverse a magistrate judge's determination of a non-dispositive motion only where it is "clearly erroneous or contrary to law." *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); *see also Haines v. Liggett Grp. Inc.*, 975 F.2d 81, 83 (3d Cir. 1992). "The party filing the notice of appeal bears the burden of demonstrating that the magistrate judge's decision was clearly erroneous or contrary to law." *Marks v. Struble*, 347 F. Supp. 2d 136, 149 (D.N.J. 2004) (cleaned up).[1]

A motion to transfer venue is a non-dispositive pretrial matter. *See Security Police and Fire Professionals of America Retirement Fund v. Pfizer, Inc.*, No. 10-3105, 2011 WL 5080803 at *3

---

[1] The Court notes that Plaintiffs state "[i]t is Defendants' burden to establish that this case should be transferred from Plaintiffs' home forum" and that "[o]n a transfer motion, Defendants bear 'the burden of establishing that the transfer is appropriate and must establish that the alternate forum is more convenient than the present forum.'" (Pls.' Br. at 10) (citation omitted). Plaintiffs are correct that Defendants had the burden on the transfer motion. For clarification, the party filing the appeal of the magistrate judge's decision, here, Plaintiffs, have the burden to "demonstrat[e] that the Magistrate Judge's decisions" fail to meet the above standard. *Allen v. Banner Life Ins. Co.*, 340 F.R.D. 232, 237 (D.N.J. 2022); *Champion Painting Specialty Servs. Corp. v. Del. River Port Auth.*, 658 F. Supp. 3d 241, 247 (D.N.J. 2023) ("The burden of demonstrating that the order was clearly erroneous or contrary to law falls on the party who has filed the notice of appeal.").

(D.N.J. Oct. 25, 2011) ("A magistrate judge's ruling on transfer of venue to another district is considered nondispositive as it does not reach the merits of the case"); *see also Siemens Financial Services, Inc. v. Open Advantage M.R.I. II L.P.*, No. 07-1229, 2008 WL 564707 at *2 (D.N.J. Feb. 29, 2008) ("A motion to transfer a case to another district is considered a non-dispositive motion.").

A ruling is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Dome Petroleum Ltd. v. Emps. Mut. Liab. Ins. Co. of Wis.*, 131 F.R.D. 63, 65 (D.N.J. 1990) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). "A ruling is contrary to law if the magistrate judge has misinterpreted or misapplied the applicable law." *Pharm. Sales & Consulting Corp. v. J.W.S. Delavau Co., Inc.*, 106 F. Supp. 2d 761, 764 (D.N.J. 2000) (citation omitted). Under this standard, a "district judge's simple disagreement with the magistrate judge's findings is insufficient to meet the clearly erroneous standard of review." *Andrews v. Goodyear Tire & Rubber Co., Inc.*, 191 F.R.D. 59, 68 (D.N.J. 2000) (citation omitted).

### III. DISCUSSION

Plaintiffs argue that Judge Almonte's decision is clearly erroneous and contrary to law because the specific venue provision—15 U.S.C. § 78aa(a)—properly interpreted in the present tense, requires an action to be venued *inter alia*, where a defendant transacts business. (Pls.' Br. at 13-15). However, Plaintiffs assert neither Defendants nor their subsidiaries transacted business in New York at the time Plaintiffs' Complaint was filed, thus, venue is not proper in the S.D.N.Y. (*Id.*). Plaintiffs further argue transfer to the S.D.N.Y. implicates Plaintiffs' New Jersey RICO claim, which would be dismissed in the S.D.N.Y. for lack of jurisdiction under Securities Litigation Uniform Standards Act ("SLUSA"). (*Id.* at 15-17). Additionally, Plaintiffs argue Judge Almonte

affording only "slight" weight to Plaintiffs' choice of forum when assessing the *Jumara*[2] factors was contrary to Third Circuit jurisprudence. (*Id.* at 17-18). Furthermore, Plaintiffs argue Judge Almonte erred in reasoning that because "there are already many other Credit Suisse securities fraud cases that have been litigated, or that are currently being litigated, in [S.D.N.Y.]" the instant case should likewise be transferred since many of those case were not analogous securities fraud related actions. (*Id.* at 19-20 (quoting Op. at 7 n.2)).

Defendants argue that Judge Almonte "correctly found that the activities of Credit Suisse's subsidiaries during the relevant time period were sufficient to establish venue there under the Securities Exchange Act." (Defs.' Br. at 1-2). Additionally, Defendants argue Plaintiffs waived their argument that the relevant time period for the "transacts business" prong of the Exchange Act's venue statute is when the Complaint was filed, not when the alleged misconduct occurred, since they failed to raise it before Judge Almonte. (*Id.* at 2). Notwithstanding, Defendants assert "Credit Suisse subsidiaries continued to transact business in the S.D.N.Y. at the time Plaintiffs initiated this action." (*Id.*). Defendants further argue Judge Almonte properly found that determining whether SLUSA would prompt dismissal of Plaintiffs' state law RICO claim is a decision made subsequent to transfer. (*Id.*). Next, Defendants argue Judge Almonte's limited weight attributed to Plaintiffs choice of forum was proper, not clear error. (*Id.* at 2-3). Additionally, Defendants argue that Judge Almonte correctly afforded significant weight to the pendency of related S.D.N.Y. cases. (Defs.' Br. 14-17).

The Court addresses each argument in turn.

---

[2] *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879-80 (3d Cir. 1995).

### i. Judge Almonte's Decision That Venue Was Proper in the S.D.N.Y. Was Not Clearly Erroneous or Contrary to Law

In determining the first prong of whether a case should be transferred—whether venue is proper in the transferee district—Judge Almonte found venue was proper in the S.D.N.Y. under the venue provision of the Securities Exchange Act 15 U.S.C. § 78aa, which provides *inter alia*, that venue is proper in "a district in which the defendant transacts business." (Op. 8 (citation omitted)).

For whether Defendants transacted business in the S.D.N.Y., Plaintiffs assert that Credit Sussie, a Swiss holding company headquartered in Switzerland, "cannot meet that test because it does not have any offices or employees in New York" and merely had "ownership interests in subsidiaries that once operated in the United States." (Pls.' Br. at 11). Plaintiffs note that Credit Sussie previously moved to dismiss a complaint brought in the S.D.N.Y. alleging violations of Section 12 of the Clayton Act, which like the Securities Act, provides venue is proper where the defendant transacts business. (*Id.*). In that case, *Dennis v. JPMorgan Chase & Co.*, 343 F. Supp. 3d 122, 199 (S.D.N.Y. 2018), Defendants submitted a declaration stating that it "has no offices in the United States and no employees in the United States" and that its "only connection to the United States is that it has subsidiaries that are located in or do business in the United States." *Dennis*, 343 F. Supp. 3d at 199. In granting Credit Sussie's dismissal, the *Dennis* Court found that "a review of SEC filings indicates that Credit Suisse Group AG is 'not an operating company' and merely 'holds investments in subsidiaries.' This does not amount to 'transacting business' in the Southern District of New York." *Id.*[3]

---

[3] In *Dennis*—a Clayton Act action—the Court primarily focused on personal jurisdiction arguments rather than venue. 343 F. Supp. 3d at 197-98. Additionally, Defendants note that in other Securities Exchange Act cases pending in the S.D.N.Y. in which Defendants are named, they have not moved to dismiss for a lack of personal jurisdiction or venue. (Defs.' Br. at 6 n.4).

Judge Almonte, after acknowledging Plaintiffs' same argument (Op. at 8), found excerpts from Credit Sussie's Form 20-F for fiscal year 2022, filed with the SEC in 2023, supported Defendants' business activities in New York, and that the instant action was analogous to *Karimi v. Deutsche Bank Aktiengesellschaft*, No. 20-8978, 2022 WL 1001566, at *4 (D.N.J. Mar. 31, 2022). (Op. at 9). In *Karimi*, a judge in this District determined venue proper in the S.D.N.Y. where the foreign bank's documents showed that "the bank traded on the New York Stock Exchange; that it engaged in 'U.S. banking activities directly through [its] New York branch[;]' and that it listed its 'agent in the United States' as having an address located in New York City." (Op. at 9 (citing *Karimi*, 2022 WL 1001566, at *4)).

Similarly, Judge Almonte noted that Defendants' Form 20-F stated that Defendants:

> (1) "direct US offices are composed of our New York Branch and representative offices in California[;]" (2) "the 'New York Branch is licensed by the New York Superintendent of Financial Services [], examined by the Department of Financial Services (DFS), and subject to laws and regulations applicable to a foreign bank operating a New York branch[;]'" (3) "Defendant Credit Suisse Group AG's authorized representative in the U.S. is 'Credit Suisse (USA), Inc.' located at 11 Madison Avenue, New York, New York[;]" and (4) "Credit Suisse Group AG and Credit Suisse AG's shares are listed on the New York Stock Exchange."

(Op. at 9-10). Thus, Judge Almonte determined "Plaintiffs could have filed this case in the [S.D.N.Y.] [since] Credit Suisse 'transacts business' there under § 78aa." (Op. at 10).

Plaintiffs now contend the 2022/2023 Form 20-F Form discussed by Judge Almonte is "stale" information. (Pls.' Br. at 14).[4] For example, Plaintiffs posit that Credit Sussie's shares were delisted from the New York Stock Exchange ("NYSE") in June 2023 and that "Credit Suisse no

---

[4] The Court notes that despite Plaintiffs' argument on appeal that the 2022 Form 20-F is "stale," Judge Almonte noted in his Opinion that Plaintiffs attached Defendants' entire 612-page Form 20-F as an exhibit to their opposition brief. (Op. at 9 n.3 (citing ECF No. 12-5). Thus, the persuasiveness of Plaintiffs' argument that such information was outdated is minimized by Plaintiffs' inclusion of the 2022 in their own opposition brief.

6

longer has a New York branch and the subsidiary that Judge Almonte found to be Credit Suisse Group AG's authorized representative in the United States is currently inactive." (*Id.*).[5] Thus, according to Plaintiffs, Defendants did not submit evidence that they presently transacted business, and as a result, Judge Almonte's reliance on *Karimi* was "misplaced." (*Id.*).

However, Judge Almonte properly relied on *Karimi*. In determining whether venue was proper under the Securities Exchange Act, the *Karimi* Court considered the activities of the defendant's subsidiaries, particularly that the defendant conducted activities "through its New York branch" and used a subsidiary in the United States as its "agent in the United States" when determining venue was proper in the S.D.N.Y. 2022 WL 1001566, at *4. These two factors were present here, based on the 2022 Form 20-F before Judge Almonte. (*See* Op. at 9-10).[6] Moreover, *Karimi* was decided in this District. Thus, Judge Almonte's determination that *Karimi* is analogous was not clearly erroneous or contrary to law.

---

[5] Plaintiffs assert that "Judge Almonte wrongly afforded any weight to that fact in determining whether Credit Suisse Group AG transacts business in New York." (Pls.' Br. at 14 n.6 (citing *In re Bulk [Extruded] Graphite Prods. Antitrust Litig.*, 2004 WL 7338471, at *6 (D.N.J. Oct. 28, 2004) (citing *Gibson v. Pittsburgh Forgings Co.*, 284 F. Supp. 569, 570–71 (S.D.N.Y. 1968) (trading of shares on NYSE not sufficient to transact business in New York))). For edification of the parties, the Court focuses it determination on the other relevant factors Judge Almonte noted in Defendants' 2022 Form 20-F, such as Defendants' New York branch and authorized representative located in New York, and which are similar to factors in Defendants' 2023 Form 20-F.

[6] Plaintiffs cite to *Diamond Chem. Co. v. Atofina Chem., Inc.*, 268 F. Supp. 2d 1, 12 (D.D.C. 2003) and *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 402 F. Supp. 262, 327-28 (E.D. Pa. 1975) for the proposition that merely having a subsidiary in a district is insufficient for a defendant to transact business in that district. (Pls.' Br. at 12). As Judge Almonte noted, these two cases relate to the Clayton Act. (Op. 4 n.4). Notwithstanding, in *Zenith Radio Corp.*, the Court enumerated relevant factors that could indicate an entity transacted business in a district through subsidiaries, including *inter alia*, subsidiaries with "[c]ontrolling stock ownership and interlocking directorates" and a "common marketing image by the related corporations." 402 F. Supp. at 327-28. *Accord Diamond Chem. Co.*, 268 F. Supp. 2d at 11 (citing same portion of *Zenith*). Here, those factors were present in Defendants' 2022 Form 20-F. (*See* Credit Sussie 2022 Form 20-F, ECF No. 12-5 at 18 (Credit Suisse and Credit Suisse Group AG filed a single Form 20-F); *id.* at 193 (both entities had the same offices in Switzerland and the same authorized representative in the United States); *id.* at 202 ("The composition of the Boards of the Group [i.e., Credit Suisse] and the Bank [i.e., Credit Suisse AG] is identical")).

    ii.    **Plaintiffs Waived Their New Argument That the Time of Filing is the Proper Interpretation of "Transacts Business" Under 15 U.S.C. § 78aa(a) and Notwithstanding, Defendants Recent Form 20-F Demonstrates Defendants were "Transacting Business" At the Time Plaintiffs' Complaint was Filed**

Plaintiffs raise a new argument in appealing Judge Almonte's decision to transfer—that "the operating subsidiaries of Credit Suisse Group AG did not transact business in the SDNY at the time this suit was filed." (Pls.' Br. at 13). Defendants contend Plaintiffs waived this argument because they failed to raise it before Judge Almonte. (Defs.' Br. at 7-8). The Court agrees. *See In re Nat'l Collegiate Student Loan Trs.*, 971 F.3d 433, 444 (3d Cir. 2020) ("Arguments not presented to a magistrate judge and raised for the first time in objections to the magistrate's recommendations are deemed waived."); *see also Lithuanian Com. Corp. v. Sara Lee Hosiery*, 177 F.R.D. 205, 211 (D.N.J. 1997) (refusing to "consider any arguments which [plaintiff] did not present to [the] Magistrate Judge . . . in the first instance").[7]

Even considering Plaintiffs' argument, it is unpersuasive. First, Plaintiffs posit that courts in this District interpreting 15 U.S.C. § 78aa(a) have found "transacts business" to mean a defendant "must transact business in the district 'at the time the [c]omplaint was filed.'" (Pls.' Br. at 13 (citing *SEC v. Cooperman*, 243 F. Supp. 3d 597, 608 (E.D. Pa. 2017)). Second, Plaintiffs cite *Sunbury Wire Rope Mfg. Co. v. U.S. Steel Corp.*, 230 F.2d 511, 512-13 (3d Cir. 1956), which held that the same "transacts business" language in the Clayton Act requires examination of the defendant's activities at the time the complaint was filed. (Pls.' Br. at 13 (also citing *City of Philadelphia v. Morton Salt Co.*, 248 F. Supp. 506, 509-10 (E.D. Pa. 1965) ("The venue statutes are phrased in the present tense, clearly referring to the time that a complaint is filed with the

---

[7] Additionally, Plaintiffs now cite to documents showing Credit Sussie's shares were delisted on the NYSE in June 2023 and that Credit Sussie (USA), Inc's status is "currently inactive.") (Pls.' Br. at 14). However, Plaintiffs did not include or mention these documents in their briefing before Judge Almonte. (*See* ECF Nos. 12, 12-2 through 12-6). Accordingly, "[i]n reviewing a magistrate judge's factual determinations, a district judge may not consider evidence not before the magistrate judge." *Sabinsa Corp. v. HerbaKraft, Inc.*, 2020 WL 1503061, at *4 (D.N.J. Mar. 30, 2020).

court.")).[8] Defendants assert that Plaintiffs' reliance on *Cooperman* is misplaced because (1) *Cooperman* cited dated decisions rather than more recent cases decided in the S.D.N.Y., that have interpreted the Securities Exchange Act, not the Clayton Act, to mean a defendant transacted business "during the relevant period"[9] and (2) *Cooperman* conflated two distinct prongs of 15 U.S.C. § 78aa(a). (Defs.' Br. at 8, 8 n. 5)).

The Court acknowledges that courts interpreting the similar venue provision of the Clayton Act is helpful in construing the Securities Exchange Act. (Pls.' Br. at 13 n.5 (citing *United Indus. Corp. v. Nuclear Corp. of Am.*, 237 F. Supp. 971, 978 (D. Del. 1964) (analogizing the Exchange Act's venue provision to that of the Clayton Act, referring to it as a "comparable statute[]," and noting that "Clayton Act decisions would appear to be an appropriate frame of reference for interpreting the 'transacts business' venue clause" in the Exchange Act); *Cox v. CoinMarketCap OPCO, LLC*, 112 F. 4th 822, 831 (9th Cir. 2024)). Notwithstanding, in *Karimi*, a judge in this District, under the Securities Exchange Act venue provision, considered evidence about the

---

[8] In *Levine v. Arabian American Oil Co.*, the S.D.N.Y., in determining venue under 28 U.S.C. § 1391(c), noted that a "majority of courts have held that it is the time the cause of action accrued that is crucial." *Levine v. Arabian American Oil Co.*, No. 84-2396, 1984 WL 1247, at *4 n.5 (S.D.N.Y. 1984) (citing *Board of County Commissioners v. Wilshire Oil Co.*, 523 F.2d 125 (10th Cir. 1975); *Snyder v. E. Auto Distrib. Inc.*, 357 F.2d 552 (4th Cir.), *cert. denied*, 384 U.S. 987 (1966); *American Insurance Co. v. Louis Lesser Enterprises, Inc.*, 353 F.2d 997 (8th Cir. 1965); *Great American Ins. Co. v. Louis Lesser Enterp. Inc.*, 353 F.2d 997 (8th Cir. 1965); *Farmers Elevator Mutual Ins. Co. v. Carl J. Austad & Sons, Inc.*, 343 F.2d 7 (8th Cir. 1965); *Marquest Med. Prods. Inc. v. EMDE Corp.*, 496 F. Supp. 1242 (D. Colo. 1980); *Dayton Casting Co. v. Full Mold Process, Inc.*, 404 F. Supp. 670 (S.D. Ohio 1975); *Ward v. Island Creek Fuel and Trans. Co.*, 261 F. Supp. 810 (N.D. W.Va. 1966); *Sharp v. Com. Solvents Corp.*, 232 F. Supp. 323 (N.D. Tex. 1964); *Nelson v. Victory Elec. Works, Inc.*, 210 F. Supp. 954 (D. Md. 1962); *L'Heureux v. Central Am. Airways Flying Serv. Inc.*, 209 F. Supp. 713 (D. Md. 1962)). The *Levine* Court further noted that four cases "took the minority view, stating that it is the time the complaint was filed that is crucial." (*Id.* (citing *Satterfield v. Lehigh Valley Railroad Co.*, 128 F. Supp. 669 (S.D.N.Y. 1955); *Sunbury*, 230 F.2d at 511; *United Industrial Corp. v. Nuclear Corp. of America*, 237 F. Supp. 971 (D. Del. 1964); *Schreiber v. Loews's, Inc.*, 147 F. Supp. 319 (W.D. Mich. 1957)). The *Levine* Court did not reach the issue given the facts of the case. (*Id.*). The Court notes the majority, if not all of these cases interpreted the Clayton Act.

[9] *See New v. JPMorgan Chase Bank, N.A.*, No. 23-9371, 2024 WL 4228058, at *5 (S.D.N.Y. Sept. 18, 2024) (finding that venue was proper in the transferee district because the defendant "transacted business from [that district] during the period that [plaintiff's] [c]omplaint puts at issue"); *Sec. & Exch. Comm'n v. Brda*, No. 24-4806, 2024 WL 4817475, at *5 (S.D.N.Y. Nov. 18, 2024) (holding the proper question is whether defendants "transacted business from the proposed transferee district during the relevant period.").

9

defendant business's activities in 2019 during the putative class period rather than 2020 when the complaint was filed. *See Karimi*, 2022 WL 1001566, at *4 n.5.

Regardless, Defendants aver that "Credit Suisse subsidiaries did transact business in the S.D.N.Y. as of the date the Complaint was filed on April 23, 2024" and remained in operation until May 31, 2024, until the subsidiaries merged with a subsidiary of the UBS Group AG. (Defs.' Br. at 9 (citing Certification of Mark M. Makhail ("Makhail Cert.") Ex. 1, ECF No. 21-2)). Indeed, approximately one month prior to Plaintiffs filing their Complaint, Credit Sussie AG (the subsidiary entity) filed its 2023 Form 20-F with the SEC which contained analogous facts to the 2022 Form 20-F, including *inter alia*, that Credit Suisse AG had a "New York Branch . . . authorized and supervised by the New York Department of Financial Services" and had an "[a]uthorized representative in the US" located at "11 Madison Avenue, New York, New York." (*Id.* (citing Makhail Cert., Ex. 2, ECF No. 21-3)).[10] These similarities overlap with relevant information contained in Defendants' 2022 Form 20-F relied on by Judge Almonte. (*See* Op. at 9-10). Thus, even under Plaintiffs' preferred interpretation of "transacts business," Judge Almonte's decision was not clearly erroneous.

### iii. Adequate Case Law Supports Judge Almonte's Reasoning in Transferring the Action Notwithstanding That Plaintiffs' New Jersey RICO claim Might Be Dismissed Pursuant to SLUSA

Plaintiffs next argue New York is not a proper forum because "transfer threatens dismissal of Plaintiffs' New Jersey RICO claim based on New York's lack of jurisdiction over the claim" pursuant to SLUSA. (Pls.' Br. at 16).[11] Plaintiffs cite two cases, one from New York and one from

---

[10] Defendants note that while Plaintiffs "suggest that Credit Suisse (USA), Inc. [] the New York-based authorized representative for Credit Suisse in the United States [] "is currently inactive[,]" Credit Suisse (USA), Inc. became inactive [] on August 9, 2024, after the Complaint was filed. (Defs.' Br. at 9, n.6 (citing ECF No. 20-10)).

[11] According to Plaintiffs, SLUSA "prohibits a 'covered class action' from bringing any state law claims alleging 'an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security." (Pls.' Br. at 16 (citing 15 U.S.C. § 77p(b)). Plaintiffs further note an individual action is prohibited "if it is part of 'any group of lawsuits filed in or pending in the same court and involving common questions of law or fact, in which . . . the

10

Arizona to support this proposition. (*Id.*). However, Judge Almonte considered Plaintiffs' argument and found that "any potential threat of SLUSA pre-emption does not bar the transfer of Plaintiffs' case to the [S.D.N.Y.]" (Op. at 10-11 n.5 (citing *Phoenix Ins. Co. Ltd. v. Teva Pharm. Indus. Ltd.*, 381 F. Supp. 3d 416, 422-23 (E.D. Pa. 2019)).

Plaintiffs have not met their burden that Judge Almonte's decision to transfer, notwithstanding the future viability of their New Jersey RICO claim, was clearly erroneous or contrary to law. Indeed, in addition to *Phoenix Insurance Co.*, other decisions reached the same conclusion. *See Hound Partners Offshore Fund, LP v. Valeant Pharms. Int'l, Inc.*, No. 18-00076, 2018 WL 1940437, at *3 (S.D.N.Y. Apr. 24, 2018) (rejecting plaintiff's argument that the "action could not have been brought in the [transferee district] because SLUSA bars its state law claims from proceeding there" and ordering transfer because jurisdiction over each claim is to be evaluated "at the time of filing" and "SLUSA preemption . . . occurs only as a result of a post-filing decision by a court"); *Highfields Cap. I LP v. Perrigo Co.*, No. 19-10285, 2020 WL 1150000, at *2 n.3 (D. Mass. Mar. 10, 2020). These cases demonstrate adequate support for Judge Almonte's decision regarding transfer in the context of Plaintiffs' New Jersey RICO claim. *See Goodyear Tire & Co.*, 191 F.R.D. at 68 ("A district judge's simple disagreement with the magistrate judge's findings is insufficient to meet the clearly erroneous standard of review.") (citation omitted); *see also Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985) (noting that the clearly erroneous standard "does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently.").

---

lawsuits are joined, consolidated, or otherwise proceed as a single action fort any purpose." (*Id.* (citing 15 U.S.C. § 77p(f)(2)(A)).

### iv. Judge Almonte's Allocation of "Slight" Weight to Plaintiffs' Choice of Forum was Not Clearly Erroneous or Contrary to Law

Contrary to Plaintiffs' argument, "Judge Almonte's decision to afford only 'slight' weight to Plaintiffs' choice of forum" was not "contrary to well established Third Circuit law." (Pls.' Br. at 17). Indeed, Plaintiffs are correct that their choice of forum is given "significant weight." (*Id.*). *See Wm. H. McGee & Co., Inc. v. United Arab Shipping Co.*, 6 F. Supp. 2d 283, 289 (D.N.J. 1997) ("In the Third Circuit, a plaintiff's choice of forum is a 'paramount concern' in deciding a motion to transfer venue."); *see also Defense Distributed v. Platkin*, 617 F. Supp. 3d 213, 233 (D.N.J. 2022) ("A plaintiff's choice of forum is a paramount consideration in any determination of a transfer request . . . which should not be lightly disturbed.") (citation modified); *Job Haines Home for the Aged v. Young*, 936 F. Supp. 223, 227 (D.N.J. 1996) (noting that courts generally "assign the plaintiff's choice of forum significant weight") (citation modified).[12]

Importantly, Judge Almonte acknowledged that "a plaintiff's choice of forum is a paramount consideration that should not be lightly disturbed." (Op. at 11 (citing *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970)). However, Judge Almonte went on to address other well established jurisprudence which instructs that "a plaintiff's forum selection is not dispositive . . . when the convenience of the parties and interests of justice weigh in favor of [transfer]" or "when the central facts of a lawsuit occur outside the chosen forum . . . ." (*Id.* at 11-12) (citation modified). Here, Judge Almonte found both of those competing considerations at play, which decreased the weight given to Plaintiffs' forum. (*Id.* at 12 ("Of note, none of the Plaintiffs are New Jersey companies, and only Plaintiff Appaloosa's principal place of business is located in New

---

[12] While in the security fraud context, "[t]here is support for the proposition that more significance should be allotted to plaintiff's choice of forum[,]" *Job Haines Home for the Aged*, 936 F. Supp. at 229 (citing *S-G Securities, Inc. v. Fuqua Inv. Co.*, 466 F. Supp. 1114, 1122 (D. Mass. 1978)), as noted above, there are other considerations enumerated in case law that decrease the weight afforded to a plaintiff's choice of forum.

Jersey.")); (*id.* ("[T]he crux of this matter involves the alleged misrepresentations made by Credit Suisse, all of which were transmitted globally and, at most, place SDNY and the District of New Jersey on the same footing.")); (*id.* at 13-14, 17-18 (noting that other analogous cases pending in the S.D.N.Y. weighed in favor of transfer when considering the second private factor—Defendants' choice of forum and the second public factor—practical considerations)).

"Plaintiffs have not pointed to any binding authority that supports the proposition that entities can be considered New Jersey residents when their only connection to the state is that they are managed by a third party located there." *Franklin U.S. Rising Dividends Fund v. Am. Int'l Grp., Inc.*, No. 13-5805, 2014 WL 3748214, at *5 (D.N.J. July 29, 2014) (finding that the magistrate judge did not commit clear error in affording less deference to investment funds' choice of a New Jersey forum); *see also Metro. Life Ins. Co. v. Bank One, N.A.*, No. 03-1882, 2012 WL 4464026, at *5 (D.N.J. Sept. 25, 2012) (affording *slight weight* to plaintiffs' choice of forum where "nearly all of Credit Suisse's alleged complicity in the fraud occurred in New York").

Judge Almonte had "broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh[ed] in favor of transfer." *Jumara*, 55 F.3d at 883. Accordingly, Judge Almonte's decision to give Plaintiffs' forum less deference was not clearly erroneous or contrary to law. *Franklin*, 2014 WL 3748214, at *5.

### v. Judge Almonte's Finding that the S.D.N.Y. Has Analogous Cases Weighed in Favor of Transfer Was Not Clearly Erroneous or Contrary to Law

The parties disagree over the similarities between the cases venued in the S.D.N.Y. and the instant action. *Compare* (Pls.' Br. at 19 ("Judge Almonte's observation that 'there are already many other Credit Suisse securities fraud cases that have been litigated, or that are currently being litigated, in [S.D.N.Y.]' . . . was simply wrong.")) (opinion citation omitted), *with* (Defs.' Br. at 15 ("Plaintiffs' attempt to downplay the overlap between this case and the cases before Judge

13

McMahon, and the substantial judicial efficiencies that would result from transfer, is similarly meritless.")).

As Judge Almonte noted, "the legal claims and issues between cases do not have to be identical for this factor to favor transfer; rather the existence of a similar case supports transfer where the cases are similar enough that transfer would support judicial efficiency or reduce the risk of inconsistent results." (Op. at 16-17 (citing *Hytera Commc'ns Corp. v. Motorola Sols., Inc.*, 2018 WL 7108018, at *10 (D.N.J. Dec. 6, 2018))). Here, the *Diabat v. Credit Suisse Group AG*, 2024 WL 4252502 (S.D.N.Y. Sept. 19, 2024) case, presided over by Judge McMahon, is similar enough to support transfer. As Judge Almonte noted, "[b]oth cases arise out of the same nucleus of operative facts—allegations that Credit Suisse misrepresented its financial health when it sold securities, whether it was AT1 Notes or any other class of security." (Op. at 18). Plaintiffs assert the *Diabat* case relates to a period of two years while Plaintiffs' action focuses on a narrower period. (Pls.' Br. at 20). However, subsequent to Judge McMahon's decision, the timeline was narrowed and comports with Plaintiffs' period. *Compare Diabat*, 2024 WL 4252502, at *147 ("Every statement made prior to October 27, 2022 has been dismissed as not actionable[.]"), *with* (Complaint ¶ 4, ECF No. 1 (alleging that the issues that ultimately resulted in Defendants' alleged misstatements began "in October 2022")).[13]

---

[13] Additionally, Plaintiffs contend that "Judge McMahon specifically found that the *Diabat* action did not even involve the securities at issue in this case—the AT1 Notes." (Pls.' Br. at 20 (citing *Diabat*, 2024 WL 4252502 at *138 n.21)). However, Judge Almonte explicitly stated "[b]oth cases arise out of the same nucleus of operative facts—allegations that Credit Suisse misrepresented its financial health when it sold securities, *whether it was AT1 Notes or any other class of security.*" (Op. at 18) (emphasis added). Moreover, in that same footnote, Judge McMahon references two cases on her docket, in which the complaints *do* specifically contain allegations related to the AT1 Notes. *Diabat*, 2024 WL 4252502 at *138 n.21. Her reference to these allegations in such an extensive opinion in a related case only further demonstrates her experience with the various actions and their respective allegations that arose from the purported securities fraud by Credit Sussie and its executives. *See, e.g., Core Cap. Partners, Ltd. v. Credit Suisse Grp. AG, et al.*, No. 23-09287 (S.D.N.Y.) (putative class action brought by AT1 bond purchasers in which a motion to dismiss is pending); *Star Colbert v. Dougan*, 724 F. Supp. 3d 304, 313 (S.D.N.Y. 2024) (discussing various aspects of the AT1 bonds, including the terms of their governing documents). Plaintiffs note Defendants have moved to dismiss *Core Capital* as duplicative of the *Diabat* case. (Pls. Br. at 20 n. 8). While the Court is unaware as to the result, if any, of

14

Judge McMahon has relevant experience with the underlying cases related to Credit Sussie's alleged securities fraud. *See Franklin*, 2014 WL 3748214, at *6 (holding that the transferee court's experience gained in presiding over a related class action weighed in favor of transfer even where that class action was no longer pending). Accordingly, Judge Almonte's decision to weigh the pendency of related actions when considering whether the practical considerations weighed in favor of transfer was not clearly erroneous or contrary to law.

## IV.    CONCLUSION

For the reasons set forth above, Plaintiffs' appeal of Judge Almonte's Order, dated January 31, transferring Plaintiffs' case to the S.D.N.Y. (ECF No. 19) is **DENIED** and the January 31 Order (ECF No. 19) is **AFFIRMED**. An appropriate Order accompanies this Opinion.

DATED: September 10, 2025

JULIEN XAVIER NEALS
United States District Judge

---

that motion, such a motion further demonstrates the similarities of the underlying allegations between *Core Capital* and this case.